

## NUMBER 13-12-00722-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**JORUAM C. OLIVARES,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

### On appeal from the County Court at Law No. 6 of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Benavides**
**Memorandum Opinion by Justice Benavides**

Appellant, Joruam C. Olivares, was convicted of resisting arrest, a class A misdemeanor. *See* TEX. PENAL CODE ANN. § 38.03 (West, Westlaw through 2013 3d C.S.). By two issues, Olivares contends that the evidence was insufficient to prove that:

(1) he was under arrest; or (2) that he used any force against police officers.    We affirm.

## I. BACKGROUND

At trial, Deputy Juan Zarzoza of the Hidalgo County Sheriff's Department testified that he was called to a residential location in Mission, Texas on September 23, 2011. Deputy Zarzoza testified that, upon his arrival, he attempted to drive up to the residence but was stopped at the gates by Olivares, who had a bottle of beer in his hand.    Deputy Zarzoza stated that Olivares told him that he could not drive onto his property.    Olivares also asked who had called the officer to the home and "said not to get into his property because he didn't give a shit, that he was going to kick [Deputy Zarzoza's] ass." Olivares also attempted to close the gate.    Olivares's brothers, Javier and Jordan, then approached Deputy Zarzoza's vehicle.    Deputy Zarzoza noticed that the younger brother, fifteen-year-old Jordan, was crying and had a swollen upper lip and blood on his chin.    The older brother, Javier, told Deputy Zarzoza that the residence "was his property too" and gave the deputy permission to enter.    Javier explained that he had called the sheriff's department because Olivares had assaulted his younger brother Jordan.

Deputy Zarzoza stated that he asked Olivares to drop the beer bottle, but Olivares refused and "squared off."    Deputy Zarzoza described "squaring off" as follows:    "he bladed his body 45 degrees to the side, raise[d] his hands, [kept] on raising his hands telling me that he was going to kick my ass.    Fuck you.    And that he didn't care." When Deputy Zarzoza realized that he "was going to have problems," he requested backup.    Olivares then approached Deputy Zarzoza.    The deputy redirected himself

and tried to restrain Olivares's hands, as Olivares was still holding the beer bottle. According to Deputy Zarzoza, Olivares then crashed against the police unit and the deputy "held him and . . . took him down."

Deputy Juan Cardona responded to Deputy Zarzoza's request for backup. Deputy Cardona testified that, when he arrived, Deputy Zarzoza was still talking to Olivares, and Olivares had a beer bottle in his hand. Deputy Zarzoza approached the two men. He heard Deputy Zarzoza tell Olivares he was under arrest for assaulting Jordan and saw the officer try to restrain Olivares's hands. Deputy Cardona witnessed Olivares start to walk away and then begin to swing his arms. As the law enforcement officers tried to restrain Olivares's hands, all three men fell down. The two officers tried to get Olivares's hands together to handcuff them, but could not. Deputy Cardona stated that he repeatedly told Olivares to stop resisting or he would get sprayed with pepper spray. Deputy Cardona eventually "sprayed [Olivares] with a small burst but it had no [e]ffect."

At that point, Deputy Glen Mendoza arrived. Deputy Mendoza expanded his police-issued baton, placed it behind Olivares's right arm, and brought Olivares's arm back to place the handcuffs on him.

Olivares testified on his own behalf. He testified that no officer ever told him he was under arrest—they allegedly only told him to "stop moving." He also denied striking his younger brother Jordan and stated that his older brother, Javier, was lying about the alleged assault.

3

Olivares was charged with assault, a class A misdemeanor, *see* TEX. PENAL CODE ANN. § 22.01(a) (West, Westlaw through 2013 3d C.S.), and with resisting arrest, search, or transportation, also a class A misdemeanor. *See id.* § 38.03. After a trial, the jury acquitted Olivares of the assault charge but found him guilty of resisting arrest. The trial court sentenced Olivares to one year in county jail, but the sentence was suspended and Olivares was placed on community supervision for twelve months, assessed a $2,000 fine, and ordered to complete forty hours of community supervision. Olivares then filed this appeal.

## II. STANDARD OF REVIEW

We apply the standard articulated in *Jackson v. Virginia* to determine whether the evidence is sufficient to support a criminal conviction. 443 U.S. 307, 319 (1979); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (holding that the *Jackson* standard of review is the "only standard" that should be applied in a sufficiency review). Under *Jackson*, we examine the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 443 U.S. at 319.

The elements of the offense are measured as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of

4

liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

We defer to the jury's determinations of credibility and weight to be given to the evidence because jurors are the sole fact-finders. *See Brooks*, 323 S.W.3d at 899; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West, Westlaw through 2013 3d C.S.) ("The jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony. . . ."). Each fact need not point directly and independently to the guilt of Olivares, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

### III. DISCUSSION

Olivares's issues both arise from his resisting arrest conviction. The statute regarding resisting arrest, Texas Penal Code section 38.03, provides as follows:

> A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another.

TEX. PENAL CODE ANN. § 38.03. With this in mind, we begin our discussion of Olivares's issues.

### A. The Arrest

Olivares first argues that the evidence is insufficient to support a finding that the officer was "effecting an arrest, search, or transportation." *Id.* He contends that his encounter with Deputy Zarzoza was a detainment "for the officer's safety and for

5

investigative purposes."  Thus, Olivares posits that he could not have been "resisting" when there was no "arrest."  *See id.*

A person is arrested "when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant."  TEX. CODE CRIM. PROC. ANN. art. 15.22 (West, Westlaw through 2013 3d C.S.).  Officers, however, also have the right to detain persons as reasonably necessary to investigate crimes, maintain the status quo, and/or ensure officer safety.  *See Rhodes v. State*, 945 S.W.3d 115, 117 (Tex. Crim. App. 1997) (citing *United States v. Sokolow*, 490 U.S. 1 (1989); *United States v. Weaver*, 8 F.3d 1240 (7th Cir. 1993); *Ruvalcaba v. Los Angeles, Ca.*, 64 F.3d 1323 (9th Cir. 1995)).  The Texas Court of Criminal Appeals has held that there is no bright-line rule for determining when one's liberty has been restrained for the purpose of arrest or detainment.  *See id.* at 118.  Factors that may determine whether an arrest is being effected include:   (1) the amount of force displayed; (2) the duration of a detention; (3) the efficiency of the investigation; and (4) the officer's expressed intent.  *See State v. Sheppard,* 271 S.W.3d 281, 291 (Tex. Crim. App. 2008) (citing 40 GEORGE E. DIX AND ROBERT O. DAWSON, TEXAS PRACTICE:  CRIMINAL PRACTICE & PROCEDURE, §7.34 at 464–67 (2d ed.)).

Here, the evidence shows that Deputy Zarzoza's expressed intent was clear:   he was placing Olivares under arrest for assaulting Jordan.  Deputy Zarzoza testified that he saw fifteen-year-old Jordan crying with a swollen upper lip and blood on his chin, and stated that Javier told him that Olivares had caused Jordan's injuries.  Deputy

6

Cardona's testimony confirmed Deputy Zarzoza's intentions—he heard Deputy Zarzoza tell Olivares that he was placing him under arrest. Although Olivares testified that no deputy ever told him that he was under arrest, and instead just told him to "stop moving," the jury was entitled to believe the deputies' rendition of the events over Olivares's. *See Brooks*, 323 S.W.3d at 899; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04. Viewing all of the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that the officers were effecting an arrest. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 895. We overrule Olivares's first issue.

**B. The Use of Force Against the Officers**

Second, Olivares contends that the evidence was insufficient to show that he used force against the officers. We disagree. Deputy Zarzoza testified that Olivares first approached the gate with a beer bottle in his hand. Deputy Zarzoza also testified that Olivares used profane language towards him and "squared off," or took a confrontational stance, against him. Deputy Cardona witnessed Olivares try to walk away from Deputy Zarzoza, but then began to swing his arms. Officer Cardona also stated that he threatened to use pepper spray against Olivares if he kept resisting arrest, and eventually did use the spray because Olivares failed to cooperate. Finally, all of the officers (Zarzoza, Cardona, and Mendoza) testified that it took the physical effort of the three of them to restrain Olivares and get him handcuffed.

Viewing all of the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Olivares

7

used force against the officers.   *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 895.   We overrule Olivares's second issue.

## IV. CONCLUSION

Having overruled both of Olivares's issues, we affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
26th day of June, 2014.